IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

PNC Bank, National Association, successor to National
City Bank

Plaintiff,

vs

650 Church Street, LLC,

Defendant.

No. 19-cv-602
Judge Dow

## PNC BANK N.A.'S MOTION FOR ENTRY OF A JUDGMENT OF FORECLOSURE AND SALE APPOINTING RECEIVER AS SELLING OFFICER, AND AUTHORIZING RECEIVER TO MARKET AND SELL THE PROPERTY AND ENTER INTO A LISTING AGREEMENT

NOW COMES Plaintiff, PNC Bank, National Association, successor to National City Bank ("Plaintiff" or "PNC"), by and through its attorneys Plunkett Cooney P.C. and hereby moves this Court for entry a judgment of foreclosure and sale appointing the Receiver as sales officer, and authorizing the court appointed receiver to market and sell the Property which is the subject matter of this suit and commonly known as 650 Church Street, Lake Zurich, Illinois 60047 (the "Property") and to enter, if necessary, into a listing agreement, and in support thereof, states as follows:

1.     As set forth in Plaintiff's motion for default, Plaintiff served defendant 650 Chuch Street, LLC ("Defendant") with the summons and complaint via the Illinois Secretary of State on February 25, 2019.

2.     On March 7, 2019, the sole member of Defendant appeared in court and was given until April 1, 2019 to obtain counsel and file an appearance.  Doc. 12.

3.     As of the date of this motion, no attorney has appeared on behalf of Defendant in this cause, and Defendant has not filed an answer or response to the complaint.

1

4.     April 1, 2019, this Court granted PNC's motion to appoint receiver (doc. 16). The Court appointed Ryan McNaughton of Ryan McNaughton Holdings, LLC as receiver (hereafter "Receiver").

5.     The Receiver is currently in possession and control of the Property and has managed the Property in accordance with the duties of a receiver as outlined by 735 ILCS 5/15-1704.

6.     To date, Defendant has not obtained a proposed short sale that is acceptable to Plaintiff.

7.     Based upon Defendant's failure to respond to the complaint, and obtain a an acceptable short sale for the Property, PNC hereby requests this Court enter a judgment of foreclosure and sale in its favor and against Defendant in the amount set forth in PNC's attached supporting affidavit, that being $6,929,185.13 through June 14, 2019.  See Exhibit 1.

8.     Further, in accord with Illinois law, Plaintiff requests this Court (i) appoint the Receiver as sales officer and (ii) authorize the Receiver to retain, if necessary, a broker to market and sell the Property pursuant to the judgment of foreclosure and sale.  Illinois foreclosure law allows foreclosed properties to be sold through a broker.  Section 15-1506(f) of the Illinois Mortgage Foreclosure Law provides, "Without limiting the general authority and powers of the court, special matters may be included in the judgment of foreclosure if sought by a party in the complaint or by separate motion.  Such matters may include, without limitation: (1) a manner of sale other than public auction; . . . (3) an official or other person who shall be the officer to conduct the sale other than the one customarily designated by the court; (4) provisions for non-exclusive broker listings or designating a

2

duly licensed real estate broker nominated by one of the parties to exclusively list the real estate for sale." 735 ILCS 5/15-1506(f).

9.     If appointed as the designated sales officer, the Receiver proposes, if necessary, to retain a broker to list and market the Property with a commission rate of no higher than 6% of the sale price.

10.     Appointing the Receiver as the sales officer in this action will help ensure the sale of the Property for the most commercially favorable price for the type of real estate involved and is in the best interest of the Property, Defendant, and PNC.

11.     Upon Receiver obtaining a written and signed contact for the sale of the Property, which the Receiver and PNC are willing to accept, either the Receiver or PNC will present a motion to this Court to authorize the Receiver's execution of that contract and to set forth the terms under which said contract may close.

WHEREFORE, for the foregoing reasons, PNC Bank, National Association, successor to National City Bank, respectfully requests this Court enter a judgment of foreclosure and sale in its favor and against Defendant 650 Church Street, LLC in the amount of $6,929,185.13; designate the Receiver as sales officer; and grant the Receiver the authority to, if necessary, retain a broker to market and sell the Property, and grant such further relief to which Plaintiff is entitled.

PNC Bank, National Association,
successor to National City Bank, N.A.


/s/ Matthew L. Hendricksen
One of Its Attorneys


James M. Crowley, Esq. (ARDC #6182597)
Matthew L. Hendricksen, Esq. (ARDC #6296720)
Plunkett Cooney P.C.
221 N. LaSalle Street, Suite 1550
Chicago, IL 60601
Telephone: (312) 670-6900
jcrowley@plunkettcooney.com
mhendricksen@plunkettcooney.com


Open.26645.73853.22162435-1

4

# EXHIBIT 1

IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

PNC Bank, National Association, successor to National City
Bank

                        Plaintiff,

vs

650 Church Street, LLC,

                        Defendant.

No. 19-cv-602
Judge Dow

## AFFIDAVIT OF MORTGAGEE IN SUPPORT OF MOTION FOR JUDGMENT OF FORECLOSURE AND SALE AND MOTION FOR DEFAULT

I, Marc Palmer, being first duly sworn on oath deposes and states that if sworn as a witness would testify as follows:

1.     That I have personal knowledge of the facts stated in this Affidavit and if sworn as a witness I could testify competently thereto.

2.     That I am a Vice President with the Asset Resolution Team of PNC Bank, National Association, successor to National City Bank, ("Plaintiff" or "PNC") and that in such capacity I am familiar with the books and records of Plaintiff; I have personally examined same; and I am duly authorized to make this Affidavit on behalf of Plaintiff.

3.     As a Vice President with PNC on the Asset Resolution Team, I am charged with overseeing and managing certain loan accounts, including the Loan which is the subject of this lawsuit ("Loan"), which is evidenced by the Note (defined in ¶5) and secured by the Mortgage (defined in ¶5).

4.     As a result of my duties of overseeing and managing the Loan, I am familiar with amounts due upon the Loan and resulting Judgment (defined in ¶11), as well as Plaintiff's

1

collection efforts thereupon.

5.     That I am familiar with the following instrument to be foreclosed: A Mortgage, as amended, ("Mortgage") executed on November 29, 2007, by 650 Church Street, LLC ("Borrower"), as Mortgagor in favor of Plaintiff, as Mortgagee, and recorded against the property commonly known as 650 Church Street, Lake Zurich, Illinois ("Property") to secure an indebtedness in the sum of $3,500,000.00 as evidenced by a Promissory Note, as amended, executed Borrower in favor of Plaintiff on November 29, 2007 (the "Note"). Copies of the Mortgage and Note are attached hereto as Exhibits A and B.

6.     PNC Bank, National Association, successor to National City Bank is the legal holder of said Note and Mortgage given as security therefore.

7.     The real estate conveyed by the Mortgage is fee simple.

8.     I am familiar with the books of original entry and accounts maintained by Plaintiff for the amounts due on the Loan.

9.     I am familiar with the current status of the Loan account.

10.    Defaults occurred under the terms of the Note due to Borrower's failure to make the required payments under the Note when due.

11.    As a result, Plaintiff filed suit and on February 5, 2016, obtained a final judgment on Note in the case of *PNC Bank, N.A. v 650 Church Street, LLC et. al.* in the Circuit Court of Lake County, case number 10 CH 4470 ("State Court Action") in the amount of $5,321,730.82 (hereafter "Judgment"). Exhibit C.

12.    Subsequent to the date of the Judgment, Borrower has defaulted under upon the Mortgage for failure to pay all amounts due on the Judgment.

13.     Since the entry of the Judgment, Plaintiff has not received or collected any funds due on the Judgment.  As such, the full amount of the Judgment remains due and owing to Plaintiff.

14.     There is due and owing to the Plaintiff the following amounts:

JUDGMENT BALANCE THROUGH June 14, 2019:

| | |
|---|---|
| Judgment Balance | $5,321,730.82 |
| Post Judgment Interest at 9% | $1,607,454.31 |
| **Total** | **$6,929,185.13** |

*Per Diem* after June 14, 2019:  $1,312.21

WHEREFORE, affiant further sayeth naught.

I, Marc Palmer, being first duly sworn on oath, state that I have read the foregoing Affidavit and believe the contents therein are true, in substance and fact.

Marc Palmer, Vice President - Asset Resolution Team
PNC Bank, National Association

SUBSCRIBED AND SWORN TO
before me this 17th day of
June, 2019

NOTARY PUBLIC

James M. Crowley, Esq. (ARDC #6182597)
Matthew L. Hendricksen, Esq. (ARDC #6296720)
Plunkett Cooney P.C.
221 N. LaSalle Street, Suite 1550
Chicago, IL 60601
Telephone: (312) 670-6900
jcrowley@plunkettcooney.com
Open.26645.73853.22301753-1
Open.26645.73853.22301753-1

3

# EXHIBIT A

*1032087*

RECORDATION REQUESTED BY:
  National City Bank
  Chicago
  One North Franklin, Suite
  3600
  Chicago, IL 60606

WHEN RECORDED MAIL TO:
  National City Bank
  P.O. Box 2977
  Pittsburgh, PA 15230

SEND TAX NOTICES TO:
  650 Church Street, LLC
  650 Church Street
  Lake Zurich, IL 60047

Image# 042519800014 Type: MTG
Recorded: 12/03/2007 at 01:11:00 PM
Receipt#: 2007-00057459
Total Amt: $48.00 Page 1 of 14
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File **6276360**

**FOR RECORDER'S USE ONLY**

This Mortgage prepared by:
  Darcey Luce on behalf of
  National City Bank
  One North Franklin, Suite 3600
  Chicago, IL 60606

# National City®

## MORTGAGE

**MAXIMUM LIEN.** At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $3,500,000.00.

THIS MORTGAGE dated November 29, 2007, is made and executed between 650 Church Street, LLC, an Illinois limited liability company, whose address is 650 Church Street, Lake Zurich, IL 60047 (referred to below as "Grantor") and National City Bank, whose address is One North Franklin, Suite 3600, Chicago, IL 60606 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Lake County, State of Illinois:

See attached Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 650 Church Street, Lake Zurich, IL 60047. The Real Property tax identification number is 14-16-100-016-0000, 14-16-100-017-0000 and 14-16-100-032-0000.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related

(14)

Doc Number: 6276360 Page 1 of 14

| | MORTGAGE | |
|---|---|---|
| Loan No: 150816 | (Continued) | Page 2 |

or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

FUTURE ADVANCES. In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly

| Loan No: 150816 | MORGAGE (Continued) | Page 3 |
| --- | --- | --- |

sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than fifty percent (50%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender,

Loan No: 150816

**MORGAGE**
**(Continued)**

Page 4

and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialman's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $20,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or

| Loan No: 150816 | MORTGAGE (Continued) | Page 5 |

restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Mortgage:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's indebtedness shall be paid in full.

CONDEMNATION. The following provisions relating to condemnation proceedings are a part of this Mortgage:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the

**MORTGAGE**

Loan No: 150818     (Continued)     Page 6

award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

MORTGAGE
(Continued)

Loan No: 150816

Page 7

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

FULL PERFORMANCE. If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

REINSTATEMENT OF SECURITY INTEREST. If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

EVENTS OF DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

Payment Default. Grantor fails to make any payment when due under the Indebtedness.

Default on Other Payments. Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Other Defaults. Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

False Statements. Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Defective Collateralization. This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien)

## MORTGAGE
(Continued)

Loan No: 150816          Page 8

at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person

MORTGAGE
(Continued)

Loan No: 150816                                                                        Page 9

from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MORTGAGE**
Loan No: 150816  **(Continued)**  Page 10

**ADDENDUM TO DEFINITION OF INDEBTEDNESS.** The word "Indebtedness" shall include any and all obligations and liabilities of Borrower/Grantor to Lender, whether absolute or contingent, whether now existing or hereafter created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefor) under any agreement, device or arrangement designed to protect Borrower/Grantor from fluctuations of interest rates, exchange rates or forward rates, including, but not limited to, dollar-denominated or cross-currency exchange agreements, forward currency exchange agreements, interest rate caps, collars or floors, forward rate currency or interest rate options, puts, warrants, swaps, swaptions, U.S. Treasury locks and U.S. Treasury options, any other interest rate hedging transactions, such as, but not limited to, managing the Borrower's/Grantor's interest rate risk associated with any pending or potential capital market transactions such as fixed rate bond issues and any and all cancellations, buybacks, reversals, terminations or assignments of any of the foregoing.

**WAIVER OF RIGHT OF REDEMPTION AND REINSTATEMENT.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON GRANTOR'S BEHALF AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY. GRANTOR HEREBY WAIVES ALL RIGHTS TO REINSTATEMENT PROVIDED BY ANY LAW NOW EXISTING OR HEREINAFTER ENACTED.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means 650 Church Street, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means 650 Church Street, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other

**MORTGAGE**
(Continued)

Loan No: 150816                                                                    Page 12

construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means National City Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 29, 2007, in the original principal amount of $3,500,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is a variable interest rate based upon an index. The index currently is 3.000% per annum. Payments on the Note are to be made in accordance with the following payment schedule: The unpaid principal balance of this Note shall at all times bear interest at a rate equal to the Contract Rate, provided, that so long as any principal of or accrued interest on this Note is overdue, all unpaid principal of this Note and all overdue interest on that principal shall bear interest at a fluctuating rate equal to two percent (2%) per annum above the rate that would otherwise be applicable, but in no case less than two percent (2%) per annum above the Prime Rate; provided further, that in no event shall any principal of or interest on this Note bear interest at any time after Maturity at a lesser rate than the rate applicable thereto immediately after Maturity. The "Contract Rate" shall at all times be a fluctuating rate equal to 1.90% per annum plus the index, provided, that in the event the index is unavailable as a result of Lender's good faith determination of the occurrence of one of the events specified in the section labeled "LIBOR Unavailable", the "Contract Rate" shall be a fluctuating rate equal to the Prime Rate.

Interest on this Note shall be payable in arrears on December 29, 2007, and on the 29th day of each month thereafter, at Maturity, and on demand thereafter. The index rate shall be adjusted by Lender, as necessary, at the end of each Banking Day during the term hereof.

The principal of this Note shall be repayable in one (1) payment on November 29, 2008.

If any payment is required to be made on a day which is not a Banking Day, such payment shall be due on the next immediately following Banking Day and interest shall continue to accrue at the applicable rate

**LIBOR Unavailable.** Notwithstanding any provision or inference to the contrary, the Contract Rate shall not be based on the index if Lender shall determine in good faith that (a) any governmental authority has asserted that it is unlawful for Lender to fund, make, or maintain loans bearing interest based on the index, or (b) circumstances affecting the market selected by Lender for the purpose of funding the loan evidenced hereby make it impracticable for Lender to determine the index. Lender's books and records shall be conclusive (absent obvious error) as to whether Lender shall have determined that the Contract Rate is prohibited from being based on the index. If the Contract Rate is prohibited from being based on the index as a result of the occurrence of one of the events referenced in this section, then, and in each such case, notwithstanding any provision or inference to the contrary, the then outstanding principal balance of this Note shall, upon Lender giving Borrower notice of Lender's determination of the occurrence of such an event, bear interest at a Contract Rate based on the Prime Rate including the applicable spread described above.

Borrower shall pay Lender, on the date of this Note, a non-refundable closing fee in an amount equal to Seventeen Thousand Five Hundred and 00/100 dollars ($17,500.00). If the index increases, the payments tied to the index, and therefore the total amount secured hereunder, will increase. Any variable interest

Loan No: 150816

**MORTGAGE**
**(Continued)**

Page 13

rate tied to the Index shall be calculated as of, and shall begin on, the commencement date indicated for the applicable payment stream. NOTICE: Under no circumstances shall the interest rate on this Mortgage be more than the maximum rate allowed by applicable law. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.


GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

650 CHURCH STREET, LLC

By: _____
    Gerardo Chacin, Manager of 650 Church Street, LLC

Loan No: 150816

**MORTGAGE**
**(Continued)**

Page 14

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _ILLINOIS_                              )
                                                 ) SS
COUNTY OF _COOK_                                 )

On this _29th_ day of _NOVEMBER_, _2007_ before me, the undersigned Notary Public, personally appeared Gerardo Chacin, Manager of 650 Church Street, LLC, and known to me to be a member or designated agent of the limited liability company that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the limited liability company.

By _____                       Residing at _____

Notary Public in and for the State of _____

My commission expires _____

```
OFFICIAL SEAL
ARNOLD E. KAROLEWSKI
Notary Public - State of Illinois
My Commission Expires Nov 03, 2010
```

Doc Number: 6276360 Page 14 of 14



**RECORDATION REQUESTED BY:**
PNC Bank, National
Association
One North Franklin, Suite
3600
Chicago, IL 60606

Image# 048789190004 Type: MTA
Recorded: 02/02/2010 at 09:55:05 AM
Receipt#: 2010-00004592
Total Amt: $39.00 Page 1 of 4
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File **6569274**

**WHEN RECORDED MAIL TO:**
PNC Bank, National
Association
500 First Avenue, Mailstop:
P7-PFSC-05-X
Pittsburgh, PA 15219

**SEND TAX NOTICES TO:**
650 Church Street, LLC
650 Church Street
Lake Zurich, IL 60047

**FOR RECORDER'S USE ONLY**

This Modification of Mortgage prepared by:
Barb Sanders on behalf of PNC Bank, National Association
PNC Bank, National Association
One North Franklin, Suite 3600
Chicago, IL 60606

---

# FIRST MODIFICATION OF MORTGAGE

**THIS MODIFICATION OF MORTGAGE** dated January 20, 2010, is made and executed between 650 Church Street, LLC, an Illinois limited liability company, whose address is 650 Church Street, Lake Zurich, IL 60047 (referred to below as "Grantor") and PNC Bank, National Association, whose address is One North Franklin, Suite 3600, Chicago, IL 60606 (referred to below as "Lender").

**MORTGAGE.** Lender and Grantor have entered into a Mortgage dated November 29, 2007 (the "Mortgage") which has been recorded in Lake County, State of Illinois, as follows:

**RECORDED DECEMBER 3, 2007 IN DOCUMENT NO. 6276360 IN LAKE COUNTY RECORDS.**

**REAL PROPERTY DESCRIPTION.** The Mortgage covers the following described real property located in Lake County, State of Illinois:

See Exhibit "A", which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as 650 Church Street, Lake Zurich, IL 60047. The Real Property tax identification number is 14-16-100-016-0000, 14-16-100-017-000 and 14-16-100-032-0000.

**MODIFICATION.** Lender and Grantor hereby modify the Mortgage by deleting the definition of "Note" in its entirety and substituting the following in its stead:

"**Note.** The word "Note" means that certain Promissory Note dated to be effective as of

④ JT

December 29, 2008, as modified from time to time and as amended and restated by that certain Third Amended and Restated Promissory Note dated the date hereof in the original amount of $3,393,080.00 from Borrower/Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement."

**CONTINUING VALIDITY.** Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF MORTGAGE IS DATED** January 20 2010.

**GRANTOR:**

**650 CHURCH STREET, LLC**

By: _____
Gerardo Chacin, Manager of 650 Church Street, LLC

**LENDER:**

**PNC BANK, NATIONAL ASSOCIATION**

x _____
Sheila Kerins, Corporate Banking Officer

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Illinois_

)
) SS
)

COUNTY OF _DuPage_

On this _20th_ day of _January_ _2010_ before me, the undersigned Notary Public, personally appeared Gerardo Chacin, Manager of 650 Church Street, LLC, and known to me to be a member or designated agent of the limited liability company that executed the Modification of Mortgage and acknowledged the Modification to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Modification and in fact executed the Modification on behalf of the limited liability company.

By _____   Residing at _25 E. 1st St. Hinsdale, IL 60521_

Notary Public in and for the State of _Illinois_

My commission expires _03/17/2010_

Monica Kaplan

"OFFICIAL SEAL"
MONICA KAPLAN
NOTARY PUBLIC STATE OF ILLIN(
My Commission Expires 03/17/2(

## LENDER ACKNOWLEDGMENT

STATE OF _Illinois_

)
) SS
)

COUNTY OF _Cook_

On this _21st_ day of _January_ _2010_ before me, the undersigned Notary Public, personally appeared Sheila Kering and known to me to be the Corporate Banking Officer, authorized agent for PNC Bank, National Association that executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of PNC Bank, National Association, duly authorized by PNC Bank, National Association through its board of directors or otherwise, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this said instrument and in fact executed this said instrument on behalf of PNC Bank, National Association.

By _Rachel N Booker_   Residing at _1 North Franklin, Suite 2150_
_Chicago, IL 60606_

Notary Public in and for the State of _Illinois_

My commission expires _May 17, 2012_

OFFICIAL SEAL
RACHEL D BOOKER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/17/12

LASER PRO Lending, Ver. 5.45.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - IL c:\CFI\WIN\WH\CFI\LPL\G201.FC TR-36728 PR-181 (M)

Doc Number: 6569274 Page 3 of 4

**EXHIBIT A**

**LEGAL DESCRIPTION**

PARCEL 1:

THAT PART OF LOT 5 IN SCHOOL TRUSTEES' SUBDIVISION OF SECTION 16, TOWNSHIP 43
NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:
COMMENCING AT THE NORTHEAST CORNER OF SAID LOT 5 FOR A POINT OF BEGINNING; THENCE
WEST ON THE NORTH LINE OF SAID LOT 5, 1134.88 FEET TO THE CENTER LINE OF STATE
ROUTE 63; THENCE SOUTHWESTERLY ALONG SAID CENTER LINE OF ROUTE 63, 132.91 FEET;
THENCE SOUTHEASTERLY ON A LINE FORMING AN ANGLE OF 90 DEGREES WITH THE LAST SAID
CENTER LINE OF HIGHWAY, 336.61 FEET; THENCE EAST ALONG A LINE PARALLEL WITH THE
SAID NORTH LINE OF SAID LOT 5 AFORESAID, 983.63 FEET TO A POINT ON THE EAST LINE OF
SAID LOT LYING 327.78 FEET SOUTH FROM THE POINT OF BEGINNING; THENCE NORTH ON SAID
EAST LINE OF SAID LOT 5, 327.78 FEET TO THE POINT OF BEGINNING, IN LAKE COUNTY,
ILLINOIS.

PARCEL 2:

THAT PART OF LOT 5 IN SCHOOL TRUSTEES' SUBDIVISION OF SECTION 16, TOWNSHIP 43
NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:
COMMENCING AT A POINT ON THE EAST LINE OF SAID LOT 5, 327.78 FEET SOUTH AS MEASURED
ON SAID EAST LINE FROM THE NORTHEAST CORNER OF SAID LOT 5 FOR A POINT OF BEGINNING;
THENCE WEST ALONG A LINE PARALLEL WITH THE NORTH LINE OF SAID LOT 5, A DISTANCE OF
983.63 FEET; THENCE SOUTHEASTERLY 87.37 FEET TO A POINT ON A LINE THAT LIES 387.78
FEET SOUTH OF AND PARALLEL WITH THE SAID NORTH LINE OF SAID LOT 5, SAID POINT BEING
ALSO 920.52 FEET, AS MEASURED ON SAID PARALLEL LINE, FROM THE SAID EAST LINE OF LOT
5; THENCE EAST ALONG LAST SAID PARALLEL LINE, A DISTANCE 920.52 FEET TO A POINT ON
SAID EAST LINE OF LOT 5 LYING 60.0 FEET SOUTH FROM THE POINT OF BEGINNING; THENCE
NORTH ALONG SAID EAST LINE OF LOT 5, A DISTANCE OF 60.0 FEET TO THE POINT OF
BEGINNING, IN LAKE COUNTY, ILLINOIS.

PARCEL 3:

THAT PART OF LOT 5 IN SCHOOL TRUSTEES' SUBDIVISION OF SECTION 16, TOWNSHIP 43
NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT ON THE EAST LINE OF SAID LOT 5, 387.78 FEET SOUTH (AS MEASURED
ON SAID EAST LINE) FROM THE NORTHEAST CORNER OF SAID LOT 5 FOR A POINT OF
BEGINNING; THENCE WEST ALONG A LINE PARALLEL WITH THE NORTH LINE OF SAID LOT 5, A
DISTANCE OF 920.52 FEET; THENCE NORTHWESTERLY ALONG A LINE A DISTANCE OF 423.98
FEET TO A POINT ON THE CENTER LINE OF NORTH CHURCH STREET LYING 132.91 FEET
SOUTHWESTERLY (AS MEASURED ON SAID CENTER LINE) FROM THE INTERSECTION OF SAID
CENTER LINE WITH THE SAID NORTH LINE OF LOT 5; THENCE SOUTHEASTERLY ALONG THE SAID
CENTER LINE OF NORTH CHURCH STREET, A DISTANCE OF 20.0 FEET; THENCE SOUTHEASTERLY
AT RIGHT ANGLES TO SAID CENTER LINE OF NORTH CHURCH STREET, A DISTANCE OF 490.17
FEET; THENCE EAST ALONG A LINE PARALLEL WITH AND 447.78 FEET SOUTH OF SAID NORTH
LINE OF LOT 5, A DISTANCE OF 885.74 FEET TO A POINT ON THE SAID EAST LINE OF LOT 5
LYING 60.0 FEET SOUTH FROM THE POINT OF BEGINNING; THENCE NORTH ALONG SAID EAST
LINE OF LOT 5, A DISTANCE OF 60.0 FEET TO THE POINT OF BEGINNING, IN LAKE COUNTY,
ILLINOIS.

# EXHIBIT B

# National City®

## PROMISSORY NOTE

| Borrower: | 650 Church Street, LLC<br>650 Church Street<br>Lake Zurich, IL 60047 | Lender: | National City Bank<br>Chicago<br>One North Franklin, Suite 3600<br>Chicago, IL 60606 |
|---|---|---|---|

**Principal Amount: $3,500,000.00**　　　　　　　　　　　　　　　　　　　　**Date of Note: November 29, 2007**

PROMISE TO PAY. 650 Church Street, LLC ("Borrower") promises to pay to National City Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Five Hundred Thousand & 00/100 Dollars ($3,500,000.00), together with interest on the unpaid principal balance from November 29, 2007, until paid in full.

PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule:

The unpaid principal balance of this Note shall at all times bear interest at a rate equal to the Contract Rate, provided, that so long as any principal of or accrued interest on this Note is overdue, all unpaid principal of this Note and all overdue interest on that principal shall bear interest at a fluctuating rate equal to two percent (2%) per annum above the rate that would otherwise be applicable, but in no case less than two percent (2%) per annum above the Prime Rate; provided further, that in no event shall any principal of or interest on this Note bear interest at any time after Maturity at a lesser rate than the rate applicable thereto immediately after Maturity. The "Contract Rate" shall at all times be a fluctuating rate equal to 1.90% per annum plus the Index, provided, that in the event the Index is unavailable as a result of Lender's good faith determination of the occurrence of one of the events specified in the section labeled "LIBOR Unavailable", the "Contract Rate" shall be a fluctuating rate equal to the Prime Rate.

Interest on this Note shall be payable in arrears on December 29, 2007, and on the 29th day of each month thereafter, at Maturity, and on demand thereafter. The Index rate shall be adjusted by Lender, as necessary, at the end of each Banking Day during the term hereof.

The principal of this Note shall be repayable in one (1) payment on November 29, 2008.

If any payment is required to be made on a day which is not a Banking Day, such payment shall be due on the next immediately following Banking Day and interest shall continue to accrue at the applicable rate

LIBOR Unavailable. Notwithstanding any provision or inference to the contrary, the Contract Rate shall not be based on the Index if Lender shall determine in good faith that (a) any governmental authority has asserted that it is unlawful for Lender to fund, make, or maintain loans bearing interest based on the Index, or (b) circumstances affecting the market selected by Lender for the purpose of funding the loan evidenced hereby make it impracticable for Lender to determine the Index. Lender's books and records shall be conclusive (absent obvious error) as to whether Lender shall have determined that the Contract Rate is prohibited from being based on the Index. If the Contract Rate is prohibited from being based on the Index as a result of the occurrence of one of the events referenced in this section, then, and in each such case, notwithstanding any provision or inference to the contrary, the then outstanding principal balance of this Note shall, upon Lender giving Borrower notice of Lender's determination of the occurrence of such an event, bear interest at a Contract Rate based on the Prime Rate including the applicable spread described above.

Borrower shall pay Lender, on the date of this Note, a non-refundable closing fee in an amount equal to Seventeen Thousand Five Hundred and 00/100 dollars ($17,500.00).

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an index which is the "One Month LIBOR". "One Month LIBOR" means, with respect to a loan, the rate per annum (rounded upwards, if necessary, to the next higher 1/16 of 1%) determined by Lender and equal to the average rate per annum at which deposits (denominated in United States dollars) in an amount similar to the principal amount of that loan and with a maturity of one (1) month are offered at 11:00 A.M. London time (or as soon thereafter as practicable) on the Date of Reference by banking institutions in the London, United Kingdom market, as such interest rate is referenced and reported by the British Bankers Association on Reuters Screen LIBOR01 Page or, if the same is unavailable, any other generally accepted authoritative source of such interest rate as Lender may reference from time to time (the "Index"). Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each change in One Month LIBOR. Borrower understands that Lender may make loans based on other rates as well. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 1.900 percentage points over the Index. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

PREPAYMENT PENALTY. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Borrower shall have the right to prepay the principal of this Note in whole or in part, provided, that (a) each such prepayment shall be in the principal sum of One Thousand and no/100 dollars ($1,000.00) or any integral multiple thereof or an amount equal to the then aggregate unpaid principal balance of this Note, (b) to the extent principal is payable in installments, each such prepayment shall be applied to the installments of this Note in the inverse order of their respective due dates, and (c) concurrently with the prepayment of the entire unpaid principal balance of this Note, Borrower shall prepay the accrued interest on the principal being prepaid. Each prepayment of this Note may be made without premium or penalty. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount

**PROMISSORY NOTE**
Loan No: 150816          (Continued)                                                    Page 2

owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: National City Bank, Chicago, One North Franklin, Suite 3600, Chicago, IL 60606.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $20.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount; provided, however that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

CONFESSION OF JUDGMENT. Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

COLLATERAL. Borrower acknowledges this Note is secured by any and all mortgages, security agreements, assignments, loan agreements, pledge agreements and any other document or instrument evidencing a security interest or other lien in favor of Lender and executed and delivered by Borrower or any third party as security for payment of this Note and/or all indebtedness of Borrower to Lender, whether contemporaneous with the execution of this Note or at any other time. Collateral securing other obligations of Borrower to Lender may also secure this Note.

SHARING INFORMATION. Borrower hereby authorizes Lender to share all credit and financial information relating to Borrower with Lender's parent company and with any subsidiary or affiliate of Lender or of Lender's parent company.

FINANCIAL INFORMATION. Borrower will furnish to Lender, at Borrower's expense, promptly upon each request of Lender, such information in writing regarding Borrower's financial condition, income taxes, properties, business operations, if any, and pension plans, if any, as Lender may from time to time reasonably request, prepared, in the case of financial information, in accordance with generally accepted accounting principles consistently applied and otherwise in form and detail satisfactory to Lender.

FINAL AGREEMENT. This Note and the related documents set forth the entire agreement between the parties regarding the transactions contemplated hereby and supercede all prior agreements, commitments, discussions, representations and understandings, whether written or oral, and any and all contemporaneous oral agreements, commitments, discussions, representations and understandings between the parties

PROMISSORY NOTE
(Continued)

Loan No: 150816

Page 3

relating to the subject matter hereof.

DIRECT DEBIT. The following is applicable if checked by Borrower: [ ] Payments shall be paid by Borrower by debiting Borrower's _____ account, account number _____ on the due date.

DEFINITIONS. As used in this Note, except where the context clearly requires otherwise,

"Bank Debt" means, collectively, all Debt to Lender, whether incurred directly to Lender or acquired by it by purchase, pledge, or otherwise, and whether participated to or from Lender in whole or in part;

"Banking Day" means any day (other than any Saturday, Sunday or legal holiday) on which Lender's banking office is open to the public for carrying on substantially all of its banking functions;

"Banking Office Time" means, when used with reference to any time, that time determined at the location of Lender's banking office;

"Date of Reference" means, on any Banking Day, a date which is two (2) Eurodollar Banking Days prior to the Banking Day in question;

"Debt" means, collectively, all obligations of the Person or Persons in question, including, without limitation, every such obligation whether owing by one such Person alone or with one or more other Persons in a joint, several, or joint and several capacity, whether now owing or hereafter arising, whether owing absolutely or contingently, whether created by lease, loan, overdraft, guaranty of payment, or other contract, or by quasi-contract, tort, statute, other operation of law, or otherwise;

"Eurodollar Banking Day" means any Banking Day on which banks in the London Interbank Market deal in United States dollar deposits and on which banking institutions are generally open for domestic and international business at the place where Lender's banking office is located and in New York City;

"Maturity" means, when used with reference to this Note, the date (whether occurring by lapse of time, acceleration, or otherwise) upon which the last scheduled principal installment of this Note is due;

"Note" means this promissory note (including, without limitation, each addendum, allonge, or amendment, if any, hereto);

"Obligor" means any Person who, or any of whose property, shall at the time in question be obligated in respect of all or any part of the Bank Debt of Borrower and (in addition to Borrower) includes, without limitation, co-makers, indorsers, guarantors, pledgors, hypothecators, mortgagors, and any other Person who agrees, conditionally or otherwise, to make any loan to, purchase from, or investment in, any other Obligor or otherwise assure such other Obligor's creditors or any of them against loss;

"Person" means an individual or entity of any kind, including, without limitation, any association, company, cooperative, corporation, partnership, trust, governmental body, or any other form or kind of entity;

"Prime Rate" means the fluctuating rate per annum which is publicly announced from time to time by Lender as being its so called "prime rate" or "base rate" thereafter in effect, with each change in the Prime Rate automatically, immediately, and without notice changing the Prime Rate thereafter applicable hereunder, it being acknowledged that the Prime Rate is not necessarily the lowest rate of interest then available from Lender on fluctuating-rate loans;

"Proceeding" means any assignment for the benefit of creditors, any case in bankruptcy, any marshalling of any Obligor's assets for the benefit of creditors, any moratorium on the payment of debts, or any proceeding under any law relating to conservatorship, insolvency, liquidation, receivership, trusteeship, or any similar event, condition, or other thing;

"Related Writing" means this Note and any indenture, note, guaranty, assignment, mortgage, security agreement, subordination agreement, notice, financial statement, legal opinion, certificate, or other writing of any kind pursuant to which all or any part of the Bank Debt of Borrower is issued, which evidences or secures all or any part of the Bank Debt of Borrower, which governs the relative rights and priorities of Lender and one or more other Persons to payments made by, or the property of, any Obligor, which is delivered to Lender pursuant to another such writing, or which is otherwise delivered to Lender by or on behalf of any Person (or any employee, officer, auditor, counsel, or agent of any Person) in respect of or in connection with all or any part of the Bank Debt of Borrower;

and the foregoing definitions shall be applicable to the respective plurals of the foregoing defined terms.

NO SETOFF. Borrower hereby waives any and all now existing or hereafter arising rights to recoup or offset any obligation of Borrower under or in connection with this Note or any Related Writing against any claim or right of Borrower against Lender.

INDEMNITY; GOVERNMENTAL COSTS. If (a) there shall be enacted any law (including, without limitation, any change in any law or in its interpretation or administration and any request by any governmental authority) relating to any interest rate or any assessment, reserve, or special deposit requirement against assets held by, deposits in, or loans by Lender or to any tax (other than any tax on Lender's overall net income) and (b) in Lender's sole opinion any such event increases the cost of funding or maintaining loans bearing interest based upon the index or reduces the amount of any payment to be made to Lender in respect thereof, then, and in each such case, upon Lender's demand, Borrower shall pay Lender an amount equal to each such cost increase or reduced payment, as the case may be. In determining any such amount, Lender may use reasonable averaging and attribution methods. Each determination by Lender shall be conclusive absent obvious error.

INDEMNITY; ADMINISTRATION AND ENFORCEMENT. Borrower will reimburse Lender, on Lender's demand from time to time, for any and all fees, costs, and expenses (including, without limitation, the fees and disbursements of outside legal counsel and the interdepartmental charges and/or salary of in-house counsel) incurred by Lender in administering this Note or in protecting, enforcing, or attempting to protect or enforce its rights under this Note. If any amount (other than any principal of this Note and any interest and late charges) owing under this Note is not paid when due, then, and in each such case, Borrower shall pay, on Lender's demand, interest on that amount from the due date thereof until paid in full at a fluctuating rate equal to four percent (4%) per annum plus the Prime Rate.

WAIVERS; REMEDIES; APPLICATION OF PAYMENTS. Lender may from time to time in its discretion grant waivers and consents in respect of this Note or any other Related Writing or assent to amendments thereof, but no such waiver, consent, or amendment shall be binding upon Lender unless set forth in a writing (which writing shall be narrowly construed) signed by Lender. No course of dealing in respect of, nor any omission or delay in the exercise of, any right, power, or privilege by Lender shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any further or other exercise thereof or of any other, as each such right, power, or privilege may be exercised either independently or concurrently with others and as often and in such order as Lender may deem expedient. Without limiting the generality of the foregoing, neither Lender's acceptance of one or more late payments or charges nor Lender's acceptance of interest on overdue amounts on the respective rates applicable thereto shall constitute a waiver of any right of Lender. Each right, power, or privilege specified or referred to in this Note is in addition to and not in limitation of any other rights, powers, and privileges that Lender may otherwise have or acquire by operation of law, by other contract, or otherwise. Lender shall be entitled to equitable remedies with respect to each breach or anticipatory repudiation of any provision of this Note, and Borrower hereby waives any defense which might be asserted to bar any such equitable remedy. Lender shall have the right to apply payments in respect of the indebtedness evidenced by this Note with such allocation to the respective parts thereof and the respective due dates thereof as Lender in its sole discretion may from time to time deem advisable.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 150816

Page 4

**NOTICES AND OTHER COMMUNICATIONS.** Each notice, demand, or other communication, whether or not received, shall be deemed to have been given to Borrower whenever Lender shall have mailed a writing to that effect by certified or registered mail to Borrower at Borrower's mailing address (or any other address of which Borrower shall have given Lender notice after the execution and delivery of this Note); however, no other method of giving actual notice to Borrower is hereby precluded. Borrower hereby irrevocably accepts Borrower's appointment as each Obligor's agent for the purpose of receiving any notice, demand, or other communication to be given by Lender to each such Obligor pursuant to any Related Writing. Lender shall be entitled to assume that any knowledge possessed by any Obligor other than Borrower is possessed by Borrower. Each communication to be given to Lender shall be in writing unless this Note expressly permits that communication to be made orally, and in any case shall be given to Lender at Lender's banking office (or any other address of which Lender shall have given notice to Borrower after the execution and delivery this Note). Borrower hereby assumes all risk arising out of or in connection with each oral communication given by Borrower and each communication given or attempted by Borrower in contravention of this section. Lender shall be entitled to rely on each communication believed in good faith by Lender to be genuine.

**ADDITIONAL PROVISIONS.** The Borrower will have the option to extend the initial term of the loan by 12 months provided the following conditions have been achieved:
a. No event of default
b. Payment of extension fee
c. Renewal of all expired leases for a minimum of 12 months
d. Achievement of a 1.25:1.00 debt service coverage ratio

There will be an extension fee of $2,500.00 per extension.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

650 CHURCH STREET, LLC

By: _____
Gerardo Chacin, Manager of 650 Church Street, LLC

AMENDED AND RESTATED COMMERCIAL NOTE: TIME SINGLE ADVANCE/PRIME/LIBOR (Illinois)

| Amount | City, State | DATE | FOR BANK USE ONLY |
|---|---|---|---|
| $ 3,500,000.00 | Chicago, IL | December 27, 2007 | Obligor # |
| | | | Obligation # |
| | | | Office |

FOR VALUE RECEIVED, 650 Church Street, LLC, an Illinois limited liability company ("*Borrower*"), whose mailing address is 650 Church Street, Lake Zurich, IL 60047, hereby promises to pay to the order of National City Bank, a national banking association ("*Bank*"), having a banking office at One North Franklin, Suite 2150, Chicago, IL 60606, Attention: Investment Real Estate Division, Locator No. 50-CL0121 at the address specified on the bills received by Borrower from Bank (or at such other place as Bank may from time to time designate by written notice) in lawful money of the United States of America, the principal sum of Three Million Five Hundred Thousand and 00/100 DOLLARS ($3,500,000.00) or such lesser amount as may appear on this Note, or as may be entered in a loan account on Bank's books and records, or both, together with interest, all as provided below. The principal balance outstanding under this Note as of December 27, 2007 is Three Million Five Hundred Thousand and 00/100 DOLLARS ($3,500,000.00).

*1. Interest.* The unpaid principal balance of this Note shall at all times bear interest at a rate equal to the Contract Rate, *provided*, that so long as any principal of or accrued interest on this Note is overdue, all unpaid principal of this Note and all overdue interest on that principal shall bear interest at a fluctuating rate equal to two percent (2%) per annum above the rate that would otherwise be applicable, but in no case less than two percent (2%) per annum above the Prime Rate; *provided further*, that in no event shall any principal of or interest on this Note bear interest at any time after Maturity at a lesser rate than the rate applicable thereto immediately after Maturity. From December 27, 2007, up to but not including December 27, 2008, the Contract Rate shall at all times be the "*Contract Rate*" shall at all times be a fluctuating rate equal to the Prime Rate, *provided*, that Borrower shall have the right from time to time to irrevocably elect 1.90% per annum plus LIBOR as the Contract Rate applicable during a Contract Period to a Unit in the amount of Three Million Five Hundred Thousand and 00/100 Dollars ($3,500,000.00) (or any greater amount that is an integral multiple of Three Million Five Hundred Thousand and 00/100 Dollars [$3,500,000.00) by specifying the term and amount, respectively, of the Contract Period and Unit in a notice given to Bank orally or in writing not later than 2:00 p. m., Banking-Office Time, of the third (3ʳᵈ) Eurodollar Banking Day preceding the first day of that Contract Period.

Interest on this Note shall be payable in arrears on December 27, 2007, and on the 27th day of each month thereafter, at Maturity, and on demand thereafter, *except* that interest on each LIBOR Unit shall be payable in arrears on the last day of the Contract Period for that Unit, at Maturity, and on demand thereafter, and in the case of any Contract Period having a term longer than ninety (90) days, shall also be payable every three (3) months after the first day of the Contract Period. The principal comprising each LIBOR Unit shall, at the end of the Contract Period for that Unit, become part of the Prime Rate Unit unless and to the extent that Borrower shall have elected otherwise as hereinbefore provided. Bank shall be entitled to fund and maintain its funding of all or any part of any LIBOR Unit in any manner Bank may from time to time deem advisable, Borrower hereby acknowledging that all determinations relating to LIBOR Units shall be made as if Bank had actually funded and maintained each such Unit by the

purchase of deposits in an amount similar to the amount of that Unit, with a maturity similar to the Contract Period for that Unit, and bearing interest at LIBOR with respect to that Unit.

This Note is a substitution for and replacement of that certain Promissory Note dated December 27, 2007, in the original principal amount of $3,500,000.00 (as it may have been amended from time to time, the "Prior Note") which is hereby cancelled and no longer in force and effect. The Bank Debt evidenced by the Prior Note will continue to be evidenced by this Note. This Note is not a novation of the Bank Debt evidenced by the Prior Note. Any accrued and outstanding interest on the Prior Note will continue to be evidenced by this Note.

2. *Ineffective Elections.* Notwithstanding any provision or inference to the contrary, Bank shall have the right in its discretion, without notice to Borrower, to deem ineffective Borrower's election of a Contract Rate if *(a)* at the time of that election or on the first day of the Contract Period specified in Borrower's notice thereof, there shall exist or there would occur any Event of Default, *(b)* any representation, warranty, or other statement (other than any expressly made as of a single date) made by any Person (other than Bank) in any Related Writing would, if made either as of the time of that election or as of the first day of the Contract Period specified in Borrower's notice thereof, be untrue or incomplete in any respect, *(c)* after giving effect to that election, more than one Contract Rate would be applicable to all or any part of any Unit, *(d)* Bank shall determine that any governmental authority has asserted that it is unlawful for Bank to fund, make, or maintain loans bearing interest based on LIBOR, *(e)* after giving effect to that election, the unpaid principal balance of this Note would, on the first day of the Contract Period specified in Borrower's notice of that election, be less than the then aggregate amount of all LIBOR Units, *(f)* after giving effect to that election, the aggregate amount of all principal payments scheduled to become due at any one time during the Contract Period specified in Borrower's notice of that election would exceed the amount of the Prime Rate Unit at that time, or *(g)* the Contract Period specified in Borrower's notice of that election would end after the scheduled due date of the last principal payment under this Note, giving effect to any prepayments. Moreover, Borrower shall not be entitled to elect a Contract Rate if Bank shall determine that *(i)* dollar deposits of the appropriate amount and maturity are not available in the market selected by Bank for the purpose of funding the relevant Unit at LIBOR, *(ii)* circumstances affecting the market selected by Bank for the purpose of funding the relevant Unit make it impracticable for Bank to determine LIBOR, *(iii)* LIBOR is unlikely to adequately compensate Bank for the cost of making, funding or maintaining the relevant Unit for the Contract Period specified in Borrower's notice of that election, or *(iv)* any governmental authority has asserted that it is unlawful for Bank to fund, make, or maintain loans bearing interest based on LIBOR. Bank's books and records shall be conclusive (absent obvious error) as to whether Bank shall have deemed any election of a Contract Rate ineffective. Except as hereinbefore provided, there is no limit to the number of Contract Rates that may be applicable to the unpaid principal balance of this Note at any one time.

3. *Repayment.* Subject to section 7, the principal of this Note shall be due and payable in one payment on December 27, 2008.

Payments prior to the first scheduled interest and principal payments in sections 1 and 3 above have been made as evidenced by the books and records of Bank.

4. *Prepayment.* *(a)* Borrower shall have the right to prepay the principal of this Note in whole or in part, *provided*, that *(i)* each such prepayment shall be in the principal sum of One

Thousand and no/100 Dollars ($1,000.00) or any integral multiple thereof or an amount equal to the then aggregate unpaid principal balance of this Note, *(ii)* each such prepayment shall be applied to the installments of this Note in the inverse order of their respective due dates, and *(iii)* concurrently with the prepayment of the entire unpaid principal balance of this Note, Borrower shall prepay the accrued interest on the principal being prepaid.

*(b)* Each prepayment of the principal of the Prime Rate Unit may be made without premium or penalty.

*(c)* If any LIBOR Unit is either (i) prepaid in whole or in part before the last day of the Contract Period for that Unit or *(ii)* accelerated after the occurrence of an Event of Default hereunder, then, on the date of the occurrence of either *(i)* or *(ii)* above, or with respect to any partial prepayment for which a LIBOR Prepayment Charge was not determined on the date of occurrence, on the date of any subsequent prepayment for which a LIBOR Prepayment Charge is determined (each a "**Determination Date**"), Borrower shall, concurrently with the prepayment or acceleration (as the case may be), pay to Bank *(A)* the accrued interest on the principal being prepaid and *(B)* a "**LIBOR Prepayment Charge**" based on the principal amount paid and computed for the period from the date of prepayment to the last day of the Contract Period for that Unit at a rate per annum equal to the excess, if any, of LIBOR used in determining the Contract Rate for such Contract Period theretofore applicable over the Reinvestment Rate. Bank's right to collect any LIBOR Prepayment Charge shall accrue as of each Determination Date, and any delay on Bank's part to determine, or to notify Borrower as to, the amount of any LIBOR Prepayment Charge shall not constitute a waiver of, or otherwise limit, Bank's right to recover a LIBOR Prepayment Charge otherwise payable pursuant to the terms hereof.

*(d)* If Bank shall deem ineffective Borrower's election of any Contract Rate, then, and in each such case, that election shall be ineffective and Borrower shall pay to Bank, on Bank's demand, a LIBOR Prepayment Charge to be calculated as set forth in *(c)* above as if Borrower had made a prepayment before the last day of the Contract Period in the amount of the Unit in question on the date Bank deemed such election to be ineffective.

*(e)* If Bank shall determine that any governmental authority has asserted that it is unlawful for Bank to fund, make, or maintain loans bearing interest based on LIBOR, then, and in each such case, notwithstanding any provision or inference to the contrary, the principal comprising each then outstanding LIBOR Unit shall, upon Bank's giving Borrower notice of that determination, be added to and become part of the Prime Rate Unit, and Borrower shall, concurrently with the addition of that principal to the Prime Rate Unit, pay to Bank *(i)* the accrued interest on the principal so added and *(ii)* a LIBOR Prepayment Charge to be calculated as set forth in *(c)* above as if Borrower had made a payment before the last day of the Contract Period in the amount of the principal so added on the date that the principal was added to the Prime Rate Unit.

*(f)* Bank's determination of any LIBOR Prepayment Charge shall be conclusive absent obvious error. Borrower acknowledges and agrees that the LIBOR Prepayment Charge *(i)* constitutes liquidated damages, *(ii)* is a reasonable method of determining Bank's loss in the event all or any part of any principal of the Note is paid in whole or in part or is accelerated before its original due date, and *(iii)* is not a penalty.

*5. Definitions.* As used in this Note, except where the context clearly requires otherwise, "*Affiliate*" means, when used with reference to any Person (the "*subject*"), a Person that is in control of, under the control of, or under common control with, the subject, the term "*control*"

meaning the possession, directly or indirectly, of the power to direct the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise; "*Bank Debt*" means, collectively, all Debt to Bank, whether incurred directly to Bank or acquired by it by purchase, pledge, or otherwise, and whether participated to or from Bank in whole or in part;

"*Banking Day*" means any day (other than any Saturday, Sunday or legal holiday) on which Bank's banking office is open to the public for carrying on substantially all of its banking functions; "*Banking-Office Time*" means, when used with reference to any time, that time determined at the location of Bank's banking office; "*Contract Period*" means, relative to a Unit, a period selected by Borrower, *provided*, that each Contract Period shall commence on a Eurodollar Banking Day and end twelve (12) months thereafter, *provided*, that *(a)* if any Contract Period otherwise would end on a day that is not a Banking Day, it shall end instead on the next following Banking Day and *(b)* if any Contract Period commences on a day for which there is no numerical equivalent in the calendar month in which that Contract Period is to end, it shall end on the last calendar day of that calendar month unless such day is not a Banking Day in which case it shall end on the next following Banking Day; "*Debt*" means, collectively, all obligations of the Person or Persons in question, including, without limitation, every such obligation whether owing by one such Person alone or with one or more other Persons in a joint, several, or joint and several capacity, whether now owing or hereafter arising, whether owing absolutely or contingently, whether created by lease, loan, overdraft, guaranty of payment, or other contract, or by quasi-contract, tort, statute, other operation of law, or otherwise; "*Eurodollar Banking Day*" means any Banking Day on which banks in the London Interbank Market deal in United States dollar deposits and on which banking institutions are generally open for domestic and international business at the place where Bank's banking office is located and in New York City; "*LIBOR*" means, with respect to a Unit, the rate per annum (rounded upwards, if necessary, to the next higher 1/16 of 1%) determined by Bank by dividing *(a)* the rate per annum determined by Bank to equal the average rate per annum at which deposits (denominated in United States dollars) in an amount similar to that Unit and with a maturity similar to the Contract Period for that Unit are offered to Bank at 11:00 A.M. London time (or as soon thereafter as practicable) two (2) Eurodollar Banking Days prior to the first day of that Contract Period by banking institutions in any Eurodollar market selected by Bank by *(b)* the difference of one (1) less the Reserve Percentage; "*LIBOR Unit*" means a Unit for which the Contract Rate is based on LIBOR; "*Maturity*" means the date (whether occurring by lapse of time, acceleration, or otherwise) upon which the last scheduled principal payment under this Note is due; "*Note*" means this promissory note (including, without limitation, each addendum, allonge, or amendment, if any, hereto); "*Obligor*" means any Person who, or any of whose property, shall at the time in question be obligated in respect of all or any part of the Bank Debt of Borrower and (in addition to Borrower) includes, without limitation, co-makers, indorsers, guarantors, pledgors, hypothecators, mortgagors, and any other Person who agrees, conditionally or otherwise, to assure such other Obligor's creditors or any of them against loss; "*Person*" means an individual or entity of any kind, including, without limitation, any association, company, cooperative, corporation, partnership, trust, governmental body, or any other form or kind of entity; "*Prime Rate*" means the fluctuating rate per annum which is publicly announced from time to time by Bank as being its "prime rate" or "base rate" thereafter in effect, with each change in the Prime Rate automatically, immediately, and without notice changing the Prime Rate thereafter applicable hereunder, it being acknowledged that the Prime Rate is not necessarily the lowest rate of interest then available from Bank on fluctuating-rate loans; "*Prime Rate Unit*" means, at any time, the then aggregate unpaid principal balance of this Note for which the Contract Rate is based on the Prime Rate; "*Proceeding*" means any assignment for the benefit of creditors, any case in bankruptcy, any marshalling of any Obligor's assets for the

benefit of creditors, any moratorium on the payment of debts, or any proceeding under any law relating to conservatorship, insolvency, liquidation, receivership, trusteeship, or any similar event, condition, or other thing; *"Reinvestment Rate"* means, at the time of calculation, the "bond equivalent yield" interpolated from the most actively traded U.S. Treasury Bills, U.S. Treasury Notes and/or U.S. Treasury Bonds to a term equal to the principal weighted average time (as measured in years from the date of calculation and rounded to the nearest 1/10th of a year) that all principal payments subject to early repayment are scheduled to be outstanding and bear interest at a fixed rate under this Note"; *"Related Writing"* means this Note and any indenture, note, guaranty, assignment, mortgage, security agreement, subordination agreement, notice, financial statement, legal opinion, certificate, or other writing of any kind pursuant to which all or any part of the Bank Debt of Borrower is issued, which evidences or secures all or any part of the Bank Debt of Borrower, which governs the relative rights and priorities of Bank and one or more other Persons to payments made by, or the property of, any Obligor, which is delivered to Bank pursuant to another such writing, or which is otherwise delivered to Bank by or on behalf of any Person (or any employee, officer, auditor, counsel, or agent of any Person) in respect of or in connection with all or any part of the Bank Debt of Borrower; *"Reporting Person"* means each Obligor and each member of any "Reporting Group" as defined in any addendum to this Note; *"Reserve Percentage"* means the percentage (expressed as a decimal) which Bank determines to be the maximum (but in any case less than 1.00) reserve requirement (including, without limitation, any emergency, marginal, special, or supplemental reserve requirement) prescribed for so-called "Eurocurrency liabilities" (or any other category of liabilities that includes deposits by reference to which the interest rate applicable to LIBOR Units is determined) under Regulation D (as amended from time to time) of the Board of Governors of the Federal Reserve System or under any successor regulation which Bank determines to be applicable, with each change in such maximum reserve requirement automatically, immediately, and without notice changing the interest rate thereafter applicable to each LIBOR Unit, it being agreed that LIBOR Units shall be deemed Eurocurrency liabilities subject to such reserve requirements without the benefit of any credit for proration, exceptions, or offsets; *"Unit"* means the aggregate unpaid principal balance of this Note or any part of that balance; and the foregoing definitions shall be applicable to the respective plurals of the foregoing defined terms.

**6. Events of Default.** It shall be an *"Event of Default"* if *(a)* all or any part of the Bank Debt of any Obligor shall not be paid in full promptly when due (whether by lapse of time, acceleration, or otherwise); *(b)* any representation, warranty, or other statement made by any Person (other than Bank) in any Related Writing shall be untrue or incomplete in any respect when made; *(c)* any Person (other than Bank) shall repudiate or shall fail or omit to perform or observe any agreement contained in this Note or in any other Related Writing that is on that Person's part to be complied with; *(d)* any indebtedness (other than any evidenced by this Note) of any Obligor shall not be paid when due, or there shall occur any event, condition, or other thing which gives (or which with the lapse of any applicable grace period, the giving of notice, or both would give) any creditor the right to accelerate or which automatically accelerates the maturity of any such indebtedness; *(e)* Bank shall not receive (in addition to any information described in any addendum to this Note) without expense to Bank, *(i)* forthwith upon each request of Bank made upon Borrower therefore, *(A)* such information in writing regarding each Reporting Person's financial condition, properties, business operations, if any, and pension plans, if any, prepared, in the case of financial information, in accordance with generally accepted accounting principles consistently applied and otherwise in form and detail satisfactory to Bank or *(B)* written permission, in form and substance satisfactory to Bank, from each Reporting Person to inspect (or to have inspected by one or more Persons selected by Bank) the properties and records of that Reporting Person and to make copies and extracts from those records or *(ii)* prompt written notice whenever Borrower (or any director, employee, officer, or agent of Borrower) knows or

has reason to know that any Event of Default has occurred; *(f)* any judgment shall be entered against any Obligor in any judicial or administrative tribunal or before any arbitrator or mediator; *(g)* any Obligor shall fail or omit to comply with any applicable law, rule, regulation, or order in any material respect; *(h)* any proceeds of the loan evidenced by this Note shall be used for any purpose that is not in the ordinary course of Borrower's business; *(i)* any property in which any Obligor now has or hereafter acquires any rights or which now or hereafter secures any Bank Debt shall be or become encumbered by any mortgage, security interest, or other lien, *except* any mortgage, security interest, or other lien consented to by Bank; *(j)* any Obligor shall at any time or over any period of time sell, lease, or otherwise dispose of all or any material part of that Obligor's assets, *except* for inventory sold in the ordinary course of business and other assets sold, leased, or otherwise disposed of with the consent of Bank; *(k)* any Obligor shall cease to exist or shall be dissolved, become legally incapacitated, or die; *(l)* any Proceeding shall be commenced with respect to any Obligor; *(m)* there shall occur or commence to exist any event, condition, or other thing that constitutes an "Event of Default" as defined in any addendum to this Note; *(n)* there shall occur any event, condition, or other thing that has, or, in Bank's judgment, is likely to have, a material adverse effect on the financial condition, properties, or business operations of any Obligor or on Bank's ability to enforce or exercise any agreement or right arising under, out of, or in connection with any Related Writing; or *(o)* the holder of this Note shall, in good faith, believe that the prospect of payment or performance of any obligation evidenced by this Note is impaired.

**7.    Effects of Default.**  If any Event of Default (other than the commencement of any Proceeding with respect to Borrower) shall occur, then, and in each such case, notwithstanding any provision or inference to the contrary, Bank shall have the right in its discretion, by giving written notice to Borrower, to declare this Note to be due, whereupon the entire unpaid principal balance of this Note (if not already due) shall immediately become due and payable in full. If any Proceeding shall be commenced with respect to Borrower, then, notwithstanding any provision or inference to the contrary, automatically, without presentment, protest, or notice of dishonor, all of which are waived by all makers and all indorsers of this Note, now or hereafter existing, the entire unpaid principal balance of this Note (if not already due) shall immediately become due and payable in full.

**8.   Late Charges.**  If any principal of or interest on this Note is not paid within ten (10) days after its due date, then, and in each such case, Bank shall have the right to assess a late charge, payable by Borrower on demand, in an amount equal to the greater of Twenty and 00/100 Dollars ($20.00) or five percent (5.0%) of the amount not timely paid.

**9.  No Setoff.**  Borrower hereby waives any and all now existing or hereafter arising rights to recoup or offset any obligation of Borrower under or in connection with this Note or any Related Writing against any claim or right of Borrower against Bank.

**10. Indemnity: Governmental Costs.**  If *(a)* there shall be enacted any law (including, without limitation, any change in any law or in its interpretation or administration and any request by any governmental authority) relating to any interest rate or any assessment, reserve, or special deposit requirement (except if and to the extent utilized in computation of the Reserve Percentage) against assets held by, deposits in, or loans by Bank or to any tax (other than any tax on Bank's overall net income) and *(b)* in Bank's sole opinion any such event increases the cost of funding or maintaining any LIBOR Unit or reduces the amount of any payment to be made to Bank in respect thereof, then, and in each such case, upon Bank's demand, Borrower shall pay Bank an amount equal to each such cost increase or reduced payment, as the case

may be. In determining any such amount, Bank may use reasonable averaging and attribution methods. Each determination by Bank shall be conclusive absent obvious error.

**11.  Indemnity;  Administration and Enforcement.** Borrower will reimburse Bank, on Bank's demand from time to time, for any and all fees, costs, and expenses (including, without limitation, the fees and disbursements of legal counsel) incurred by Bank in administering this Note or in protecting, enforcing, or attempting to protect or enforce its rights under this Note. If any amount (other than any principal of this Note and any interest and late charges) owing under this Note is not paid when due, then, and in each such case, Borrower shall pay, on Bank's demand, interest on that amount from the due date thereof until paid in full at a fluctuating rate equal to four percent (4%) per annum plus the Prime Rate.

**12.  Waivers; Remedies; Application of Payments.** Bank may from time to time in its discretion grant waivers and consents in respect of this Note or any other Related Writing or assent to amendments thereof, but no such waiver, consent, or amendment shall be binding upon Bank unless set forth in a writing (which writing shall be narrowly construed) signed by Bank. No course of dealing in respect of, nor any omission or delay in the exercise of, any right, power, or privilege by Bank shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any further or other exercise thereof or of any other, as each such right, power, or privilege may be exercised either independently or concurrently with others and as often and in such order as Bank may deem expedient. Without limiting the generality of the foregoing, neither Bank's acceptance of one or more late payments or charges nor Bank's acceptance of interest on overdue amounts at the respective rates applicable thereto shall constitute a waiver of any right of Bank. Each right, power, or privilege specified or referred to in this Note is in addition to and not in limitation of any other rights, powers, and privileges that Bank may otherwise have or acquire by operation of law, by other contract, or otherwise. Bank shall be entitled to equitable remedies with respect to each breach or anticipatory repudiation of any provision of this Note, and Borrower hereby waives any defense which might be asserted to bar any such equitable remedy. Bank shall have the right to apply payments in respect of the indebtedness evidenced by this Note with such allocation to the respective parts thereof and the respective due dates thereof as Bank in its sole discretion may from time to time deem advisable. If any payment is required to be made on a day which is not a Banking Day, such payment shall be due on the next immediately following Banking Day and interest shall continue to accrue at the applicable rate.

**13.  Other Provisions.** The provisions of this Note shall bind Borrower and Borrower's successors and assigns and benefit Bank and its successors and assigns, including each subsequent holder, if any, of this Note. Except for Borrower and Bank and their respective successors and assigns, there are no intended beneficiaries of this Note or the loan evidenced by this Note. The provisions of sections 9 through 19, both inclusive, shall survive the payment in full of the principal of and interest on this Note. The captions to the sections and subsections of this Note are inserted for convenience only and shall be ignored in interpreting the provisions thereof. Each reference to a section includes a reference to all subsections thereof (i.e., those having the same character or characters to the left of the decimal point) except where the context clearly does not so permit. If any provision in this Note shall be or become illegal or unenforceable in any case, then that provision shall be deemed modified in that case so as to be legal and enforceable to the maximum extent permitted by law while most nearly preserving its original intent, and in any case the illegality or unenforceability of that provision shall affect neither that provision in any other case nor any other provision. All fees, interest, and premiums for any given period shall accrue on the first day thereof but not on the last day thereof (unless the last day is the first day) and in each case shall be computed on the basis of a 360-day year

and the actual number of days in the period. In no event shall interest accrue at a higher rate than the maximum rate, if any, permitted by law. Bank shall have the right to furnish to its Affiliates, and to such other Persons as Bank shall deem advisable for the conduct of its business, information concerning the business, financial condition, and property of Borrower, the amount of the Bank Debt of Borrower, and the terms, conditions, and other provisions applicable to the respective parts thereof. This Note shall be governed by the law (excluding conflict of laws rules) of the jurisdiction in which Bank's banking office is located.

**14. *Integration.*** This Note and, to the extent consistent with this Note, the other Related Writings, set forth the entire agreement of Borrower and Bank as to the subject matter of this Note, and may not be contradicted by evidence of any agreement or statement unless made in a writing (which writing shall be narrowly construed) signed by Bank contemporaneously with or after the execution and delivery of this Note. Without limiting the generality of the foregoing, Borrower hereby acknowledges that Bank has not based, conditioned, or offered to base or condition the credit hereby evidenced or any charges, fees, interest rates, or premiums applicable thereto upon Borrower's agreement to obtain any other credit, property, or service other than any loan, discount, deposit, or trust service from Bank. In the event and to the extent of any conflict between the terms hereof and the terms of any exhibit, schedule, addendum, allonge, modification or amendment hereto, the terms of such exhibit, schedule, addendum, allonge, modification or amendment shall control.

**15. *Notices and Other Communications.*** Each notice, demand, or other communication, whether or not received, shall be deemed to have been given to Borrower whenever Bank shall have mailed a writing to that effect by certified or registered mail to Borrower at Borrower's mailing address (or any other address of which Borrower shall have given Bank notice after the execution and delivery of this Note); however, no other method of giving actual notice to Borrower is hereby precluded. Borrower hereby irrevocably accepts Borrower's appointment as each Obligor's agent for the purpose of receiving any notice, demand, or other communication to be given by Bank to each such Obligor pursuant to any Related Writing. Bank shall be entitled to assume that any knowledge possessed by any Obligor other than Borrower is possessed by Borrower. Each communication to be given to Bank shall be in writing unless this Note expressly permits that communication to be made orally, and in any case shall be given to Bank at Bank's banking office (or any other address of which Bank shall have given notice to Borrower after the execution and delivery of this Note). Borrower hereby assumes all risk arising out of or in connection with each oral communication given by Borrower and each communication given or attempted by Borrower in contravention of this section. Bank shall be entitled to rely on each communication believed in good faith by Bank to be genuine.

**16. *Direct Debit.*** The following is applicable if checked by Borrower:[ ] Payments shall be paid by Borrower by debiting Borrower's _____ account, number_____ on the due date.

**17. *Warrant of Attorney (Confession of Judgment).*** Borrower hereby authorizes any attorney at law at any time or times to appear in any state or federal court of record in the United States of America after all or any part of the obligations evidenced by this Note shall have become due, whether by lapse of time, acceleration, or otherwise, and in each case to waive the issuance and service of process, to present to the court this Note and any other writing (if any) evidencing the obligation or obligations in question, to admit the due date thereof and the nonpayment thereof when due, to confess judgment against Borrower in favor of Bank for the full amount then appearing due, together with interest and costs of suit (including, but not limited to, attorneys' fees), and thereupon to release all errors and waive all rights of appeal and any

stay of execution. The foregoing warrant of attorney shall survive any judgment, it being understood that should any judgment against Borrower be vacated for any reason, Bank may nevertheless utilize the foregoing warrant of attorney in thereafter obtaining one or more additional judgments against Borrower. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of the authority which Borrower has granted herein arising out of or connected with the confession of any judgment. Should Borrower enter an appearance in such cause of action and commence any proceeding to open or vacate a judgment taken by confession hereunder and seek to defend against that judgment, Borrower shall be liable for and hereby agrees to pay all additional expenses of Bank including attorneys' fees, expenses and court costs incurred in connection with the collection of the obligations evidenced by this Note and all costs of any nature incurred by Bank under any of the Related Writings.

**18. Illinois Insurance.** Unless Borrower provides Bank with evidence of the insurance coverage required by Borrower's agreement with Bank, Bank may purchase insurance at Borrower's expense to protect Bank's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Bank purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Bank, but only after providing Bank with evidence that Borrower has obtained insurance as required by their agreement. If Bank purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Bank may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**19.   Jurisdiction and Venue; Waiver of Jury Trial.**   Any action, claim, counterclaim, crossclaim, proceeding, or suit, whether at law or in equity, whether sounding in tort, contract, or otherwise at any time arising under or in connection with this Note or any other Related Writing, the administration, enforcement, or negotiation of this Note or any other Related Writing, or the performance of any obligation in respect of this Note or any other Related Writing (each such action, claim, counterclaim, crossclaim, proceeding, or suit, an "**Action**") may be brought in any federal or state court located in the city in which Bank's banking office is located.   Borrower hereby unconditionally submits to the jurisdiction of any such court with respect to each such Action and hereby waives any objection Borrower may now or hereafter have to the venue of any such Action brought in any such court.  BORROWER HEREBY, AND EACH HOLDER OF THIS NOTE, BY TAKING POSSESSION THEREOF, KNOWINGLY AND VOLUNTARILY WAIVES JURY TRIAL IN RESPECT OF ANY ACTION.

BORROWER: 660 Church Street, LLC

By: _____
Printed Name: Gerardo Chacin
Title: Manager

<u>EXHIBIT "A"</u>

<u>Advance Request and Interest Rate Selection Notice Form</u>

New request [ ]
Renewal of note number _____ [ ]

650 Church Street, LLC, an Illinois limited liability company (the "Borrower") hereby requests the following interest rate selection for outstandings under the Loan, as described in the Note from Borrower to Bank dated December 27, 2007, in the amount of up to Three Million Five Hundred Thousand and 00/100 ($3,500,000.00) Dollars:

Base Rate _____ or 12 month LIBOR _____

Please indicate rate selection and **National City Bank** will quote the rate including the applicable interest addition.

The requested advance amount is $_____.
(For new advances): Disbursement of funds.
_____ Deposit to checking account number _____
_____ Deposit to savings account number _____
_____ Send cashiers check.

Dated this 27th of December, 2007

BORROWER: 650 Church Street, LLC

By:_____
Gerardo Chacin
Its: Manager

Phone number for questions:

The following LIBOR rate will be the rate assessed for the Interest Period as chosen above by Borrower:
_____(Base LIBOR rate / (1 - reserve rate) + 1.90%)

**National City Bank**

By:_____
Erica Duncan
Its: Corporate Loan Officer

Please fax this request to Mayra Medina at _____.

**AMENDED AND RESTATED COMMERCIAL NOTE: TERM SINGLE ADVANCE/ One Month LIBOR Daily Indexed (ILLINOIS)**

| Amount | City, State | Date | FOR BANK USE ONLY |
|---|---|---|---|
| $ 3,500,000.00 | Chicago, IL | Dec. 29 _____ 2008 | Obligor # 9993898943 |
| | | | Obligation # 0096352034 |
| | | | Office |

FOR VALUE RECEIVED, 650 Church Street, LLC ("*Borrower*"), an Illinois limited liability company, whose mailing address is, 650 Church Street, Lake Zurich, IL 60047, hereby promises to pay to the order of **National City Bank**, a national banking association ("*Bank*"), having a banking office at One North Franklin, Suite 3600, Chicago, IL 60606 Attention: Commercial Lending Division, at Bank's banking office (or at such other place as Bank may from time to time designate by written notice) in lawful money of the United States of America, the principal sum of Three Million Five Hundred Thousand and 00/100 DOLLARS ($3,500,000.00) together with interest, all as provided below. The principal balance outstanding under this Note as of ~~December 29~~, 2008, is Three Million Five Hundred Thousand DOLLARS ($3,500,000.00 ).

1. *Interest.* The unpaid principal balance of this Note shall at all times bear interest at a rate equal to the Contract Rate, *provided*, that so long as any principal of or accrued interest on this Note is overdue, all unpaid principal of this Note shall bear interest at a fluctuating rate equal to two percent (2%) per annum above the rate that would otherwise be applicable, but in no case less than two percent (2%) per annum above the Prime Rate; *provided further*, that in no event shall any principal of this Note bear interest at any time after Maturity at a lesser rate than the rate applicable thereto immediately after Maturity. ·On and after December 29, 2008, and prior to maturity, the "*Contract Rate*" shall at all·times be a fluctuating rate equal to 1.90% per annum plus One Month LIBOR, *provided*, that in the event One Month LIBOR is unavailable as a result of Bank's good faith determination of the occurrence of one of the events specified in section 2, the "*Contract Rate*" shall be a fluctuating rate equal to the Prime Rate.

Interest on this Note shall be payable in arrears on January 29, 2009, and on the 29th day of each month thereafter, at Maturity, and on demand thereafter. The One Month LIBOR rate shall be adjusted by Bank, as necessary, at the end of each Banking Day during the term hereof. Bank shall not be required to notify Borrower of any adjustment in the One Month LIBOR rate; however, Borrower may request a quote of the prevailing Contract Rate on any Banking Day.

This Note is a substitution for and replacement of that certain Amended and Restated Commercial Note: Time Single Advance/Prime/Libor dated December 27, 2007 in the original principal amount of $3,500,000.00 (as it may have been amended from time to time, the "Prior Note") which is hereby cancelled and no longer in force and effect. The Bank Debt evidenced by the Prior Note will continue to be evidenced by this Note. This Note is not a novation of the Bank Debt evidenced by the Prior Note. Any accrued and outstanding interest on the Prior Note will continue to be evidenced by this Note.

2. *LIBOR Unavailable.* Notwithstanding any provision or inference to the contrary, the Contract Rate shall not be based on One Month LIBOR if Bank shall determine in good faith that *(a)* any governmental authority has asserted that it is unlawful for Bank to fund, make, or maintain loans bearing interest based on One Month LIBOR, or *(b)* circumstances affecting the market selected by Bank for the purpose of funding the loan evidenced hereby make it impracticable for Bank to determine One Month LIBOR. Bank's books and records shall be conclusive (absent obvious error) as to whether Bank shall have determined that the Contract Rate is prohibited from being based on

182136

One Month LIBOR. If the Contract Rate is prohibited from being based on One Month LIBOR as a result of the occurrence of one of the events referenced in this section, then, and in each such case, notwithstanding any provision or inference to the contrary, the then outstanding principal balance of this Note shall, upon Bank giving Borrower notice of Bank's determination of the occurrence of such an event, bear interest at a Contract Rate based on the Prime Rate as contemplated in section 1.

*Repayment and Closing Fee.* Subject to section 6, the principal of the Note shall hereafter be payable in twelve (12) consecutive monthly installments commencing on January 29, 2009. Each installment shall consist of principal in the amount of Nine Thousand Seven Hundred Twenty and 00/100 Dollars ($9,720.00) plus the unpaid interest accrued on the Note, except that the final installment shall be in such amount as will pay all of the unpaid principal of and unpaid interest accrued on the Note in full.

**Payments prior to the first scheduled interest and principal payments in sections 1 and 3 above have been made as evidenced by the books and records of Bank.**

If any payment is required to be made on a day which is not a Banking Day, such payment shall be due on the next immediately following Banking Day and interest shall continue to accrue at the applicable rate.

Borrower shall have the right to prepay the principal of this Note in whole or in part, *provided*, that *(a)* each such prepayment shall be in the principal sum of One Thousand and No/100 dollars ($1,000.00) or any integral multiple thereof or an amount equal to the then aggregate unpaid principal balance of this Note, *(b)* to the extent principal is payable in installments, each such prepayment shall be applied to the installments of this Note in the inverse order of their respective due dates, and *(c)* concurrently with the prepayment of the entire unpaid principal balance of this Note, Borrower shall prepay the accrued interest on the principal being prepaid. Each prepayment of this Note may be made without premium or penalty.

**3.     Definitions.** As used in this Note, except where the context clearly requires otherwise, *"Bank Debt"* means, collectively, all Debt to Bank, whether incurred directly to Bank or acquired by it by purchase, pledge, or otherwise, and whether participated to or from Bank in whole or in part; *"Banking Day"* means any day (other than any Saturday, Sunday or legal holiday) on which Bank's banking office is open to the public for carrying on substantially all of its banking functions; *"Banking-Office Time"* means, when used with reference to any time, that time determined at the location of Bank's banking office; *"Date of Reference"* means, on any Banking Day, a date which is two (2) Eurodollar Banking Days prior to the Banking Day in question; *"Debt"* means, collectively, all obligations of the Person or Persons in question, including, without limitation, every such obligation whether owing by one such Person alone or with one or more other Persons in a joint, several, or joint and several capacity, whether now owing or hereafter arising, whether owing absolutely or contingently, whether created by lease, loan, overdraft, guaranty of payment, or other contract, or by quasi-contract, tort, statute, other operation of law, or otherwise; *"Eurodollar Banking Day"* means any Banking Day on which banks in the London Interbank Market deal in United States dollar deposits and on which banking institutions are generally open for domestic and international business at the place where Bank's banking office is located and in New York City; *"Maturity"* means, when used with reference to this Note, the date (whether occurring by lapse of time, acceleration, or otherwise) upon which the last scheduled principal installment of this Note is due; *"Note"* means this promissory note (including, without limitation, each addendum, allonge, or amendment, if any, hereto); *"Obligor"* means any Person who, or any of whose property, shall at the time in question be obligated in respect of all or any part of the Bank Debt of Borrower and (in addition to Borrower)

-2-

includes, without limitation, co-makers, indorsers, guarantors, pledgors, hypothecators, mortgagors, and any other Person who agrees, conditionally or otherwise, to make any loan to, purchase from, or investment in, any other Obligor or otherwise assure such other Obligor's creditors or any of them against loss; *"One Month LIBOR"* means, with respect to a loan, the rate per annum (rounded upwards, if necessary, to the next higher 1/16 of 1%) determined by Bank and equal to the average rate per annum at which deposits (denominated in United States dollars) in an amount similar to the principal amount of that loan and with a maturity of one (1) month are offered at 11:00 A.M. London time (or as soon thereafter as practicable) on the Date of Reference by banking institutions in the London, United Kingdom market, as such interest rate is referenced and reported by the British Bankers Association on Reuters Screen LIBOR01 Page or, if the same is unavailable, any other generally accepted authoritative source of such interest rate as Bank may reference from time to time; *"Person"* means an individual or entity of any kind, including, without limitation, any association, company, cooperative, corporation, partnership, trust, governmental body, or any other form or kind of entity; *"Prime Rate"* means the fluctuating rate per annum which is publicly announced from time to time by Bank as being its so-called "prime rate" or "base rate" thereafter in effect, with each change in the Prime Rate automatically, immediately, and without notice changing the Prime Rate thereafter applicable hereunder, it being acknowledged that the Prime Rate is not necessarily the lowest rate of interest then available from Bank on fluctuating-rate loans; *"Proceeding"* means any assignment for the benefit of creditors, any case in bankruptcy, any marshalling of any Obligor's assets for the benefit of creditors, any moratorium on the payment of debts, or any proceeding under any law relating to conservatorship, insolvency, liquidation, receivership, trusteeship, or any similar event, condition, or other thing; *"Related Writing"* means this Note and any indenture, note, guaranty, assignment, mortgage, security agreement, subordination agreement, notice, financial statement, legal opinion, certificate, or other writing of any kind pursuant to which all or any part of the Bank Debt of Borrower is issued, which evidences or secures all or any part of the Bank Debt of Borrower, which governs the relative rights and priorities of Bank and one or more other Persons to payments made by, or the property of, any Obligor, which is delivered to Bank pursuant to another such writing, or which is otherwise delivered to Bank by or on behalf of any Person (or any employee, officer, auditor, counsel, or agent of any Person) in respect of or in connection with all or any part of the Bank Debt of Borrower; and the foregoing definitions shall be applicable to the respective plurals of the foregoing defined terms.

4.      *Events of Default.* It shall be an *"Event of Default"* if *(a)* all or any part of the Bank Debt of any Obligor shall not be paid in full promptly when due (whether by lapse of time, acceleration, or otherwise); *(b)* any representation, warranty, or other statement made by any Person (other than Bank) in any Related Writing shall be untrue or incomplete in any respect when made; *(c)* any Person (other than Bank) shall repudiate or shall fail or omit to perform or observe any agreement contained in this Note or in any other Related Writing that is on that Person's part to be complied with; *(d)* any indebtedness (other than any evidenced by this Note) of any Obligor shall not be paid when due, or there shall occur any event, condition, or other thing which gives (or which with the lapse of any applicable grace period, the giving of notice, or both would give) any creditor the right to accelerate or which automatically accelerates the maturity of any such indebtedness; *(e)* Bank shall not receive (in addition to any information described in any addendum to this Note) without expense to Bank, *(i)* forthwith upon each request of Bank made upon Borrower therefore, *(A)* such information in writing regarding the financial condition, properties, business operations, if any, and pension plans, if any, of Borrower, Borrower's affiliates and/or any other Obligor prepared, in the case of financial information, in accordance with generally accepted accounting principles consistently applied and otherwise in form and detail satisfactory to Bank or *(B)* written permission, in form and substance satisfactory to Bank, from each such Person to inspect (or to have inspected by one or more Persons selected by Bank) the properties and records of that Person and to make copies and extracts from those records or *(ii)* prompt written notice whenever Borrower (or any director, employee, officer, or

agent of Borrower) knows or has reason to know that any Event of Default has occurred; *(f)* any judgment shall be entered against any Obligor in any judicial or administrative tribunal or before any arbitrator or mediator; *(g)* any Obligor shall fail or omit to comply with any applicable law, rule, regulation, or order in any material respect; *(h)* any proceeds of the loan evidenced by this Note shall be used for any purpose that is not in the ordinary course of Borrower's business; *(i)* any property in which any Obligor now has or hereafter acquires any rights or which now or hereafter secures any Bank Debt shall be or become encumbered by any mortgage, security interest, or other lien, *except* any mortgage, security interest, or other lien consented to by Bank; *(j)* any Obligor shall at any time or over any period of time sell, lease, or otherwise dispose of all or any material part of that Obligor's assets, *except* for inventory sold in the ordinary course of business and other assets sold, leased, or otherwise disposed of with the consent of Bank; *(k)* any Obligor shall cease to exist or shall be dissolved, become legally incapacitated, or die; *(l)* any Proceeding shall be commenced with respect to any Obligor; *(m)* there shall occur or commence to exist any event, condition, or other thing that constitutes an "Event of Default" as defined in any addendum to this Note; *(n)* there shall occur any event, condition, or other thing that has, or, in Bank's judgment, is likely to have, a material adverse effect on the financial condition, properties, or business operations of any Obligor or on Bank's ability to enforce or exercise any agreement or right arising under, out of, or in connection with any Related Writing; or *(o)* the holder of this Note shall, in good faith, believe that the prospect of payment or performance of any obligation evidenced by this Note is impaired.

5.    *Effects of Default.* If any Event of Default (other than the commencement of any Proceeding with respect to Borrower) shall occur, then, and in each such case, notwithstanding any provision or inference to the contrary, Bank shall have the right in its discretion, by giving written notice to Borrower, to declare this Note to be due, whereupon the entire unpaid principal balance of this Note (if not already due) shall immediately become due and payable in full. If any Proceeding shall be commenced with respect to Borrower, then, notwithstanding any provision or inference to the contrary, automatically, without presentment, protest, or notice of dishonor, all of which are waived by all makers and all indorsers of this Note, now or hereafter existing, the entire unpaid principal balance of this Note (if not already due) shall immediately become due and payable in full.

6.    *Late Charges.* If any principal of or interest on this Note is not paid within ten (10) days after its due date, then, and in each such case, Bank shall have the right to assess a late charge, payable by Borrower on demand, in an amount equal to the greater of twenty dollars ($20.00) or five percent (5%) of the amount not timely paid.

7.    *No Setoff.* Borrower hereby waives any and all now existing or hereafter arising rights to recoup or offset any obligation of Borrower under or in connection with this Note or any Related Writing against any claim or right of Borrower against Bank.

8.    *Indemnity: Governmental Costs.* If *(a)* there shall be enacted any law (including, without limitation, any change in any law or in its interpretation or administration and any request by any governmental authority) relating to any interest rate or any assessment, reserve, or special deposit requirement against assets held by, deposits in, or loans by Bank or to any tax (other than any tax on Bank's overall net income) and *(b)* in Bank's sole opinion any such event increases the cost of funding or maintaining loans bearing interest based upon One Month LIBOR or reduces the amount of any payment to be made to Bank in respect thereof, then, and in each such case, upon Bank's demand, Borrower shall pay Bank an amount equal to each such cost increase or reduced payment, as the case may be. In determining any such amount, Bank may use reasonable averaging and attribution methods. Each determination by Bank shall be conclusive absent obvious error.

-4-

9.    *Indemnity; Administration and Enforcement.* Borrower will reimburse Bank, on Bank's demand from time to time, for any and all fees, costs, and expenses (including, without limitation, the fees and disbursements of outside legal counsel and the interdepartmental charges and/or salary of in-house counsel) incurred by Bank in administering this Note or in protecting, enforcing, or attempting to protect or enforce its rights under this Note. If any amount (other than any principal of this Note and any interest and late charges) owing under this Note is not paid when due, then, and in each such case, Borrower shall pay, on Bank's demand, interest on that amount from the due date thereof until paid in full at a fluctuating rate equal to four percent (4%) per annum plus the Prime Rate.

10.    *Waivers; Remedies; Application of Payments.* Bank may from time to time in its discretion grant waivers and consents in respect of this Note or any other Related Writing or assent to amendments thereof, but no such waiver, consent, or amendment shall be binding upon Bank unless set forth in a writing (which writing shall be narrowly construed) signed by Bank. No course of dealing in respect of, nor any omission or delay in the exercise of, any right, power, or privilege by Bank shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any further or other exercise thereof or of any other, as each such right, power, or privilege may be exercised either independently or concurrently with others and as often and in such order as Bank may deem expedient. Without limiting the generality of the foregoing, neither Bank's acceptance of one or more late payments or charges nor Bank's acceptance of interest on overdue amounts at the respective rates applicable thereto shall constitute a waiver of any right of Bank. Each right, power, or privilege specified or referred to in this Note is in addition to and not in limitation of any other rights, powers, and privileges that Bank may otherwise have or acquire by operation of law, by other contract, or otherwise. Bank shall be entitled to equitable remedies with respect to each breach or anticipatory repudiation of any provision of this Note, and Borrower hereby waives any defense which might be asserted to bar any such equitable remedy. Bank shall have the right to apply payments in respect of the indebtedness evidenced by this Note with such allocation to the respective parts thereof and the respective due dates thereof as Bank in its sole discretion may from time to time deem advisable.

11.    *Other Provisions.* The provisions of this Note shall bind Borrower and Borrower's successors and assigns and benefit Bank and its successors and assigns, including each subsequent holder, if any, of this Note. Except for Borrower and Bank and their respective successors and assigns, there are no intended beneficiaries of this Note or the loan evidenced by this Note. The provisions of sections 7 through 20, both inclusive, shall survive the payment in full of the principal of and interest on this Note. The captions to the sections and subsections of this Note are inserted for convenience only and shall be ignored in interpreting the provisions thereof. Each reference to a section includes a reference to all subsections thereof (i.e., those having the same character or characters to the left of the decimal point) except where the context clearly does not so permit. If any provision in this Note shall be or become illegal or unenforceable in any case, then that provision shall be deemed modified in that case so as to be legal and enforceable to the maximum extent permitted by law while most nearly preserving its original intent, and in any case the illegality or unenforceability of that provision shall affect neither that provision in any other case nor any other provision. All fees, interest, and premiums for any given period shall accrue on the first day thereof but not on the last day thereof (unless the last day is the first day) and in each case shall be computed on the basis of a 360-day year and the actual number of days in the period. In no event shall interest accrue at a higher rate than the maximum rate, if any, permitted by law. Bank shall have the right to furnish to its affiliates, and to such other Persons as Bank shall deem advisable for the conduct of its business, information concerning the business, financial condition, and property of Borrower, the amount of the Bank Debt of Borrower, and the terms, conditions, and other provisions applicable to the respective parts thereof. Borrower hereby grants to Bank a security interest in all deposit accounts (except individual retirement accounts) Borrower has or at any time may have with Bank or Bank's affiliates to secure the payment of all amounts owed under this Note and all other Debt of Borrower to Bank or Bank's

affiliates. This Note shall be governed by the law (excluding conflict of laws rules) of the jurisdiction in which Bank's banking office is located.

**12.** *Integration.* This Note and, to the extent consistent with this Note, the other Related Writings, set forth the entire agreement of Borrower and Bank as to the subject matter of this Note, and may not be contradicted by evidence of any agreement or statement unless made in a writing (which writing shall be narrowly construed) signed by Bank contemporaneously with or after the execution and delivery of this Note. Without limiting the generality of the foregoing, Borrower hereby acknowledges that Bank has not based, conditioned, or offered to base or condition the credit hereby evidenced or any charges, fees, interest rates, or premiums applicable thereto upon Borrower's agreement to obtain any other credit, property, or service other than any loan, discount, deposit, or trust service from Bank.

**13.** *Notices and Other Communications.* Each notice, demand, or other communication, whether or not received, shall be deemed to have been given to Borrower whenever Bank shall have mailed a writing to that effect by certified or registered mail to Borrower at Borrower's mailing address (or any other address of which Borrower shall have given Bank notice after the execution and delivery of this Note); however, no other method of giving actual notice to Borrower is hereby precluded. Borrower hereby irrevocably accepts Borrower's appointment as each Obligor's agent for the purpose of receiving any notice, demand, or other communication to be given by Bank to each such Obligor pursuant to any Related Writing. Bank shall be entitled to assume that any knowledge possessed by any Obligor other than Borrower is possessed by Borrower. Each communication to be given to Bank shall be in writing unless this Note expressly permits that communication to be made orally, and in any case shall be given to Bank at Bank's banking office (or any other address of which Bank shall have given notice to Borrower after the execution and delivery this Note). Borrower hereby assumes all risk arising out of or in connection with each oral communication given by Borrower and each communication given or attempted by Borrower in contravention of this section. Bank shall be entitled to rely on each communication believed in good faith by Bank to be genuine.

**14.** *Illinois Insurance.* Unless Borrower provides Bank with evidence of the insurance coverage required by Borrower's agreement with Bank, Bank may purchase insurance at Borrower's expense to protect Bank's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Bank purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Bank, but only after providing Bank with evidence that Borrower has obtained insurance as required by their agreement. If Bank purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Bank may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**16.** *Collateral.* Borrower acknowledges this Note is also secured by any and all mortgages, security agreements, assignments, loan agreements, pledge agreements and any other document or instrument evidencing a security interest or other lien in favor of Bank and executed and delivered by Borrower or any third party as security for payment of this Note and/or all indebtedness of Borrower to Bank, whether contemporaneous with the execution of this Note or at any other time, including but not limited to the mortgage executed by Borrower in favor of Bank dated November 29, 2007, and which was recorded in Liber _____, Page _____ of Lake County Records and any amendments thereto. Collateral securing other obligations of Borrower to Bank may also secure this Note.

**17.** *Warrant of Attorney (Confession of Judgment).* Borrower hereby authorizes any attorney at law at any time or times to appear in any state or federal court of record in the United States of America after all or any part of the obligations evidenced by this Note shall have become due, whether by lapse of time, acceleration, or otherwise, and in each case to waive the issuance and service of process, to present to the court this Note and any other writing (if any) evidencing the obligation or obligations in question, to admit the due date thereof and the nonpayment thereof when due, to confess judgment against Borrower in favor of Bank for the full amount then appearing due, together with interest and costs of suit (including, but not limited to, attorneys' fees), and thereupon to release all errors and waive all rights of appeal and any stay of execution. The foregoing warrant of attorney shall survive any judgment, it being understood that should any judgment against Borrower be vacated for any reason, Bank may nevertheless utilize the foregoing warrant of attorney in thereafter obtaining one or more additional judgments against Borrower. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of the authority which Borrower has granted herein arising out of or connected with the confession of any judgment. Should Borrower enter an appearance in such cause of action and commence any proceeding to open or vacate a judgment taken by confession hereunder and seek to defend against that judgment, Borrower shall be liable for and hereby agrees to pay all additional expenses of Bank including attorneys' fees, expenses and court costs incurred in connection with the collection of the obligations evidenced by this Note and all costs of any nature incurred by Bank under any of the Related Writings.

**18.** *Direct Debit.* The following is applicable if checked by Borrower: [✓] Payments shall be paid by Borrower by debiting Borrower's _on File_ account, number _____ on the due date.

**19.** *Jurisdiction and Venue; Waiver of Jury Trial.* Any action, claim, counterclaim, crossclaim, proceeding, or suit, whether at law or in equity, whether sounding in tort, contract, or otherwise at any time arising under or in connection with this Note or any other Related Writing, the administration, enforcement, or negotiation of this Note or any other Related Writing, or the performance of any obligation in respect of this Note or any other Related Writing (each such action, claim, counterclaim, crossclaim, proceeding, or suit, an "*Action*") may be brought in any federal or state court located in the city in which Bank's banking office is located. Borrower hereby unconditionally submits to the jurisdiction of any such court with respect to each such Action and hereby waives any objection Borrower may now or hereafter have to the venue of any such Action brought in any such court. BORROWER HEREBY, AND EACH HOLDER OF THIS NOTE, BY TAKING POSSESSION THEREOF, KNOWINGLY AND VOLUNTARILY WAIVES JURY TRIAL IN RESPECT OF ANY ACTION.

Borrower: 650 Church Street, LLC

By: _____
    Gerardo Chacin
Its: Manager

-7-

## LOAN SETTLEMENT STATEMENT
## AND BORROWER'S AUTHORIZATION

Borrower: 650 Church Street, LLC

Principal Amount of Note: $3,500,000.00

Note Date: _____, 2009

In connection with the above referenced loan transaction, National City Bank, a national banking association has incurred or will incur the following expenses:

Loan Closing Fee ............................................................................................$250.00 *Waived*

*Sheila Kerins*

TOTAL: ............................................................................................$250.00

Please pay the above charges in the following manner (Check One):

[ ] Check in the above amount attached hereto.

[ ] Please debit my Account Number _____ and send copy of Debit Advice to above Borrower.

Borrower: 650 Church Street, LLC

By:_____ Its: Manager       Date: _____, 2009
    Gerardo Chacin

## Acknowledgement

Bank: NATIONAL CITY BANK

By:_____ Its: _____   Date: _____, 2009
    Sheila Kerins

## GUARANTOR'S CONSENT

Each undersigned Guarantor, intending to be legally bound, hereby acknowledges and agrees that: (i) such Guarantor consents to the foregoing Promissory Note Modification Agreement ("Modification") dated _____, 2009, by and between 650 Church Street, LLC ("Borrower" or, if more than one (1), collectively "Borrower") and National City Bank, a national banking association ("Bank"); (ii) each guaranty given by such Guarantor to secure the payment of the obligations and indebtedness of Borrower to Bank remains in full force and effect and is unaffected by the Modification; (iii) such Guarantor is bound as if such Guarantor were a party to the Modification; and (iv) such Guarantor hereby reaffirms and restates such Guarantor's absolute and unconditional guaranty of, and agreement to become a surety for, the obligations and indebtedness of Borrower to Bank, whether now existing or hereafter arising, including, but not limited, to those obligations and indebtedness evidenced by the Modification.

GUARANTOR:

Date: __2/ 9_____, 2009          _____
                                    Gerardo Chacin, individually

182136

# EXHIBIT C

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

PNC Bank, National Association, successor to National City Bank,

Plaintiff,

Vs

No. 10 CH 4470

650 Church Street, LLC, an Illinois limited liability company; Gerardo
Chacin; Worldwide Transmission Core Supply, Inc.,; and Unknown
Owners and Non-Record Claimants,

Defendants.

## JUDGMENT ORDER ON THE NOTE (COUNT III)

THIS MATTER coming before the Court on Plaintiff PNC Bank, National Association's
Motion for Judgment On The Note (Count III), due notice having been given, the Court having
jurisdiction over the parties and subject matter and being duly advised in the premises,

IT IS HEREBY ORDERED:

1. As to Count III Judgment is hereby entered against Defendant 650 Church Street,
   LLC, an Illinois Limited Liability Company, in the amount of $5,118,949.58 plus
   costs of $6,635.04 plus attorney's fees in the amount of $196,146.20 for a total
   judgment amount of $5,321,730.82.

2. This is a final judgment and there is no just reason to delay enforcement, or
   appeal, or both from this order.

Date: _____

_____
Mitchell L Hoffman
Judge

William J. Hurley, III (6182818)
CROWLEY & LAMB, P.C.
221 North LaSalle Street
Suite 1550
Chicago, Illinois 60601
(312) 670-6900